IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER WHITTAKER | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. _____ |
| | § | |
| CITY OF MAGNOLIA, TEXAS AND | § | |
| MATTHEW "DOC" DANTZER, | § | |
| DEFENDANT. | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Christopher Whittaker ("Plaintiff" or "Mr. Whittaker"), hereby files this Original Complaint against Defendants City of Magnolia (the "City") and Matthew "Doc" Dantzer ("Mr. Dantzer") (collectively, the "Defendants") and would respectfully show the Court as follows:

**I. PARTIES**

1.      Christopher Whittaker is an individual resident of the State of Texas.

2.      The city is a municipal corporation organized under Texas law, and it may be served through its City Secretary or other authorized agent at 18111 Buddy Riley Blvd., Magnolia, Texas 77354, or wherever it may be found.

3.      Mr. Dantzer is and was at all relevant times the Mayor of the City and therefore the final policymaker for the City's internal operations, including, without limitation, the City's personnel decisions. He is sued in his individual and official capacities and may be served at 18111 Buddy Riley Blvd., Magnolia, Texas 77354, or wherever he may be found.

**II. JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because Plaintiff's claims against Defendants are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy.

5. Venue is proper under 28 U.S.C. § 1391(b) because Mr. Dantzer resides, and the events giving rise to Plaintiff's claims against Defendants occurred, in Montgomery County, Texas, within the Southern District of Texas. This Court therefore has personal jurisdiction over the City, a Texas municipal corporation located within the Southern District of Texas, as well as Mr. Dantzer.

### III. CONDITIONS PRECEDENT

6. All conditions precedent have been performed or have occurred.

### IV. FACTS

7. Mr. Whittaker was a public employee who was first hired by the City in June 2025 in the role of City Administrator.

8. From October 29 to October 31, 2025, Mr. Whittaker attended the Texas Municipal League's Annual Conference in Fort Worth, Texas, along with Mr. Dantzer and the City Secretary.

9. After dinner on the night of October 29, Mr. Dantzer offered to walk the City Secretary—who was five months pregnant at the time—back to the hotel while the others in attendance continued their night elsewhere, and the City Secretary accepted.

10. The City Secretary later reported that Mr. Dantzer began to make inappropriate and sexualized statements to the City Secretary on the walk back, including by commenting on her loose pants (worn due to her pregnancy), and he then twice attempted to pull them down.

11. Fearful of Mr. Dantzer's position of authority over her, the City Secretary later reported that she remained calm and attempted to play this off as a joke. As they approached the

hotel, however, the City Secretary later reported that Mr. Dantzer suddenly—and violently—grabbed the City Secretary, pinned her by her throat against a column, and made more inappropriate and sexually-charged statements to her.

12. The City Secretary later reported to that she yelled out and managed to push Mr. Dantzer off, after which she attempted to regain her composure and retreated to her hotel room. Mr. Dantzer sent her a text message apologizing shortly thereafter.

13. The City Secretary reported this incident to the Human Resources Director, Kristy Powell ("Ms. Powell"), the morning after it occurred, and who then immediately reported the same to Plaintiff. Plaintiff advised Ms. Powell to make a report to the police.

14. Ms. Powell and the City Secretary then submitted formal, written reports regarding the October 29 incident containing explicit requests for whistleblower protection on November 4 and 5, respectively. Fully supportive, Plaintiff made these reports to the City Attorney.

15. The City Attorney hired a third-party investigator to conduct an investigation into the October 29 incident.

16. The City Attorney instructed Plaintiff not to talk to anyone about the incident, including Ms. Powell, the City Secretary, the Mayor, or the City Council.

17. No attempt was made by the third-party investigator to interview Plaintiff in connection with its investigation, despite Plaintiff indicating that he had information relevant to the investigation.

18. In December, Plaintiff requested a performance review from the City because his contract required a review in November, and it had not yet occurred.

19. That review took place before the City Council in an executive session in mid-December, during which Plaintiff was told he was doing a great job, and that there were no areas in need of improvement.

20. By the end of December, it became clear to Plaintiff that the third-party investigation was inadequate and seemed to Plaintiff more like a cover-up.

21. Desperate to get some outside attention on Mr. Dantzer's alleged sexual assault and harassment against the City Secretary, Plaintiff sent letters reporting the October 29 incident to the Texas Rangers, the Texas Workforce Commission, the Fort Worth Police Department, and the Texas Municipal League Intergovernmental Risk Pool.

22. On January 12, Plaintiff reported again, this time to the Texas Workforce Commission's Civil Rights Division, specifying continued retaliation against the City Secretary.

23. Later that same day, Plaintiff emailed the Fort Worth Police again with a report of the alleged crime.

24. On the morning of January 27, Plaintiff sent an email to Mr. Dantzer, in his capacity as Mayor, and to the City Council requesting protection under the Texas Whistle Blower Act for reporting the continued hostile work environment and bullying against the City Secretary, who was nearly eight months pregnant at this time.

25. Within three hours, the Chief of Police walked into Plaintiff's office and delivered a letter from Mr. Dantzer, in his capacity as Mayor, suspending him with pay.

26. The reason stated in the letter was that the email Plaintiff sent earlier that day, requesting whistleblower protection, referred to the issues "in a vague and general manner" and because "Plaintiff failed to bring forward any such information until now."

27. At no time was Plaintiff ever asked by the City or Mr. Dantzer to specify the issues he described in the email, nor was he asked when he became aware of those issues.

28. On January 28, Plaintiff was terminated by the City in retaliation for his reporting.

29. While the City of Magnolia does not have a grievance or appeal policy, on April 28, 2026, Plaintiff submitted a grievance and appeal request to the City Attorney pursuant to Texas Government Code § 554.006.

23. Plaintiff engaged in protected speech when he verbally reported, and reported in writing, a formal complaint regarding the October 29 incident, in which Mr. Dantzer is alleged to have assaulted and sexually harassed the City Secretary.

24. Defendants retaliated against and discharged Mr. Whittaker because of his protected speech.

25. Mr. Dantzer was acting in the course and scope of his employment as the Mayor for the City when he deprived Plaintiff of his right to free speech.

26. At the time of retaliatory discharge, Mr. Dantzer and the City Council for the City were acting under color of the laws and regulations of the City and the State of Texas.

27. The City had a policy or custom in place that permitted Mr. Dantzer to violate Plaintiff's right to free speech. Specifically, Mr. Dantzer fostered a hostile work environment to discourage employees from reporting any workplace violations or other illegal behavior.

28. As a further example of the City's policy or custom permitting Mr. Dantzer to violate Plaintiff's right to free speech, the City Attorney was asked at a City Council meeting on March 10, 2026, about the City's handling of the October 29 incident. Eventually, the City Attorney publicly admitted that the "third-party" investigation was conducted to protect the City, rather than

the City's employees—including, importantly, the City Secretary and the other employees assisting her in her report and in her continued employment afterward.

## V.   COUNT 1—42 U.S.C. § 1983:

## FIRST AMENDMENT RETALIATION AGAINST MR. DANTZER IN HIS INDIVIDUAL CAPACITY

29.     Plaintiff incorporates the preceding paragraphs as if set forth herein.

30.     At the time of and leading up to Plaintiff's discharge, he was acting as a private citizen speaking as to a matter of public concern.

31.     Plaintiff's interest in his statements and formal reports of workplace violations and/or other illegal behavior outweighs any interest of the City in promoting the efficient operation and administration of government services.

32.     The adverse employment action taken against Plaintiff would deter a person of ordinary firmness from continuing to engage in the protected speech.

33.     Plaintiff's protected speech was a substantial and motivating factor in Defendants' decision to discharge Plaintiff.

34.     Defendants' decision to discharge Plaintiff violated Plaintiff's clearly established constitutional rights and was not objectively reasonable in light of the circumstances.

35.     Furthermore, Mr. Dantzer acted willfully, deliberately, maliciously, or with reckless disregard for Plaintiff's right to free speech protected under the First Amendment.

36.     Plaintiff is entitled to and seeks damages in an amount to be determined at trial, as well as attorneys' fees, costs, and pre- and post-judgment interest, as a result of Mr. Dantzer's illegal actions and Plaintiff's discharge in violation of 42 U.S.C. § 1983.

## VI.  COUNT 2—42 U.S.C. § 1983:

## *MONELL* LIABILITY AGAINST THE CITY

37.     Plaintiff incorporates the preceding paragraphs as if set forth herein.

38. The City's policy or custom enabled its agents and employees, including Mr. Dantzer, to act with deliberate indifference to Plaintiff's right to free speech.

39. Furthermore, as the Mayor, Mr. Dantzer was the City's chief executive officer and therefore exercised broad authority over its operations, including, without limitation, by making employment decisions, managing subordinate officers, overseeing adherence to relevant laws/ordinances, and making recommendations to the City's governing body (the City Council). In other words, Mr. Dantzer is a final policymaker for the City.

40. Mr. Dantzer deliberately chose to follow a course of action that enabled him and other City employees to (1) act with deliberate indifference to Plaintiff's right to free speech, and (2) retaliate against Plaintiff for his exercise of the same.

41. Plaintiff's protected speech was a substantial and motivating factor in Defendants' decision to discharge Plaintiff.

42. Plaintiff is entitled to and seeks damages in an amount to be determined at trial, as well as attorneys' fees, costs, and pre- and post-judgment interest, as a result of the City's illegal actions and Plaintiff's discharge in violation of 42 U.S.C. § 1983.

## VII. COUNT 3—RETALIATION IN VIOLATION OF THE TEXAS WHISTLEBLOWER ACT

43. Plaintiff incorporates the preceding paragraphs as if set forth herein.

44. Plaintiff reported a violation of law by Mr. Dantzer, a public employee, and the City's chief executive officer, to the City and other appropriate law enforcement authorities.

45. Plaintiff's numerous reports regarding Mr. Dantzer's violation of law were made in good faith.

46. Plaintiff's discharge would not have occurred if Plaintiff had not reported the illegal conduct and, thereafter, been subjected to retaliation.

47. Plaintiff timely initiated the grievance or appeal procedures as required by Texas Government Code § 554.006.

48. Plaintiff is entitled to and seeks damages in an amount to be determined at trial, as well as attorneys' fees, costs, and pre- and post-judgment interest, as a result of the City's illegal actions and Plaintiff's constructive discharge in violation of the Act.

## VIII. DAMAGES

49. Plaintiff incorporates the preceding paragraphs as if set forth herein.

50. As a direct and proximate cause of Defendants' actions, Plaintiff suffered the following injuries and damages:

  a. Lost earnings;

  b. Loss of earning capacity;

  c. Damage to reputation in the past and future;

  d. Mental anguish in the past and future; and

  e. Loss of pension or retirement benefits.

## IX. ATTORNEYS' FEES & COSTS

51. Plaintiff is entitled to an award of attorneys' fees and costs, including without limitation expert fees, under 42 U.S.C. § 1988(b)-(c) and Texas Government Code § 554.003(a).

## X. DEMAND FOR JURY TRIAL

52. Plaintiff demands a trial by jury in this action.

## XI. CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests judgment in

his favor against all Defendants, jointly and severally, as follows:

    a.      Actual and/or compensatory damages;

    b.      Punitive damages;

    c.      Pre- and post-judgment interest;

    d.      Plaintiff's costs of suit and reasonable attorneys' fees; and

    e.      Such additional or alternative relief as the Court deems just and proper.

Respectfully Submitted,

**The Atlas Law Firm, PLLC**

By: */s/ Billy Robinett*
**Billy Robinett** (attorney-in-charge)
Texas Bar No. 24124176
Federal Bar No. 3633010
**Shelby Payne**
Texas Bar No. 24131576
Federal Bar No. 3761733
11767 Katy Fwy, Suite 1100
Houston, Texas 77079
Telephone: (832) 225-8353
Facsimile: (888) 861-1304
billy@atlasfirm.law
shelby@atlasfirm.law

**Attorneys for Plaintiff**